Republic Publishing Co. v. Commissioner.
Republic Publ. Co. v. Commissioner
Docket No. 3733.
United States Tax Court
1945 Tax Ct. Memo LEXIS 321; 4 T.C.M. (CCH) 92; T.C.M. (RIA) 45041; January 25, 1945
*321 C. W. Halverson, Esq., for the petitioner. Douglas L. Barnes, Esq., and W. H. Payne, Esq., for the respondent. MELLOTT
Memorandum Findings of Fact and Opinion MELLOTT, Judge: The Commissioner determined deficiencies as follows: Excess
Year
Income Tax
Profits Tax
1940
$1,440.00
$727.01
1941
2,573.00
The sole question is the reasonableness of salaries paid to petitioner's executive officer - vice-president and general manager. Findings of Fact Petitioner is a corporation organized and existing under the laws of the State of Washington with its office and principal place of business at 31 North 2nd Street, Yakima, Washington. Petitioner was organized in 1904. Its original name was The Herald Publishing Company and it was engaged in publishing a daily newspaper known as the Herald. In 1927 it acquired a second paper known as the Yakima Daily Republic. The enterprise was established by W. W. Robertson who died in 1938. At the time of his death and for several years prior thereto he had drawn a salary of $36,000 per year. The business has been quite profitable. The stock of the corporation has always been owned by members of the *322 Robertson family. Two newspapers have been published for the past fifteen years, one being a morning newspaper and the other an evening newspaper. None was in any sense a rewrite of the other, but each had its own editor, reporters, wire services, etc. One paper was published on Sundays. The net paid circulation of the morning and evening newspapers ranged from 6,000 copies in 1933 to approximately 8,500 during the taxable years. The net paid circulation of the Sunday paper ranged from 12,000 in 1933 to more than 15,000 in the taxable years. Yakima is a thriving, prosperous community in the heart of the orchard country. Petitioner, for many years, has had almost a monopoly on the newspaper and publishing business in that community. Its local, classified and national advertising has amounted to approximately a half million in gross receipts for each of the last several years. The revenue from its circulation department has averaged approximately $120,000. The income from its commercial printing department has averaged approximately $50,000. Its total assets amount to approximately $650,000 and its earned surplus has grown from $222,763.91 in 1935 to $404,039.90 in 1940. The total *323 gross receipts from all sources has been about a half million dollars - with one or two exceptions - for each of the past fifteen years. It has paid dividends ranging from $50,000 to $112,000, the average being approximately $75,000 per year. Following the death of W. W. Robertson in 1938 his son, W. H. Robertson, then in his late thirties, became vice-president and general manager at a salary of $18,000 per year. He had had considerable experience in the newspaper work, having originally become an employee of petitioner in a minor capacity in 1909. Later he had worked in various departments, especially during periods of time when he was not in school. After being graduated from the university he spent some time in New York with petitioner's national representatives learning "what national advertising was all about." He later spent some time in the same capacity in Chicago and San Francisco. Since August of 1923 he had been continuously employed by petitioner. After the death of his father, W. H. Robertson had complete supervision of and responsibility for the newspaper and printing plant and business. His salary had been fixed by the board of directors, composed of himself, his *324 mother and sister. W. H. Robertson owned a little less than fifty percent of petitioner's total outstanding stock and his mother and sister owned a little more than fifty percent of its stock. In December of 1940 W. H. Robertson's salary was "raised for the year to $24,000," "it appearing from the report that the year's business has been profitable," at the same time a dividend of $10 per share being declared. The total dividend paid during that year was $50,000. At the annual meeting of the corporation in December of 1941 it was resolved: "* * * that a bonus in the sum of 10% of the salary earned by the vice-president and manager between January 1 and December 15, 1941, be paid as additional compensation to said vice-president and manager for his services rendered and performed for the company during said period." A bonus of five percent of the salary earned by all of the remaining employees was also authorized. The total dividends paid by petitioner for the year 1941 was $112,500, or $45 per share. W. H. Robertson is the only member of the Robertson family who received any salary from the company during the taxable years. The number of employees of petitioner during the *325 taxable years ranged from 100 to 105. Shortly before the death of W. W. Robertson a competitive morning daily newspaper was established in Yakima. One of the problems confronting his son was how to meet this competition. The newspaper had no substantial effect upon the profitableness of petitioner and during the latter part of 1939 it withdrew from the field. Petitioner's gross income for the year 1940 was $454,279.71, its total net income was $132,068.67, and the total tax paid was $31,696.48. Its total gross income for 1941 was $473,982.78, its total normal tax net income was $99,124.26, and its total tax $33,051.52. $24,000 is reasonable compensation for the services rendered by W. H. Robertson during each of the taxable years. Opinion The question is entirely one of fact. It has been resolved generally in favor of the petitioner, although we have specifically withheld our approval of the bonus paid in 1941. The Commissioner, in determining the deficiency, limited the deduction for each year to $18,000. It would serve no useful purpose to summarize the evidence or attempt to rationalize completely the conclusion which we have reached. Respondent, conformable to the *326 discretion placed in him, cast upon petitioner the burden of proving that compensation in excess of the $18,000 which had been paid to W. H. Robertson during 1938 and 1939 was reasonable. To sustain its burden petitioner introduced in evidence its record of earnings, circulation, employees, gross income, etc., upon which most of our findings have been based. It called several witnesses who, having had considerable experience in managing newspapers and printing establishments, expressed the opinion that the salaries paid were entirely reasonable. Some placed the "ceiling" at $36,000. The testimony is helpful, though not necessarily controlling upon us. Respondent developed, under cross examination, the fact that the nominal editors of the two papers and the subordinates in the various departments in petitioner's business received comparatively small salaries. He also stressed the fact that the corporation was a "family owned corporation" which, of course, is a circumstance to be considered. However, the record of earnings, dividend payments, tax payments, etc., leaves little room for inference that dividends were being paid in the guise of salaries. The line of demarcation between *327 a reasonable and an unreasonable salary is very indistinct. Our best judgment is that $24,000 for each of the two years before us was reasonable. It follows, and we now hold, that the respondent erred in determining any deficiency for 1940 but he did not err in disallowing the bonus for 1941. A recomputation of the deficiency for that year must be made and Decision will be entered under Rule 50